Good morning. Ariel Stern on behalf of Bank of America. In this appeal, we will be asking this Court to reverse the district court on a number of bases. First, the district court misapplied the substantive law of tender in Nevada and made an error of state law. Separately, and just as importantly, the district court did not apply this court's binding precedent in Borne Valley, finding that the receipt of actual notice by the bank essentially mooted the due process concern. In this argument, I would like to focus on the due process issue, especially in light of the Bank of New York-Mellon v. As-and-Far Investments opinion. Before you do that, can I just ask you one question at the outset? If we were to rule in your client's favor on the tender issue, would we still need to reach each of the other issues you've raised, or no? I think if you were to rule in our favor on that issue, you would afford us complete relief. You would preserve the deed of trust. That said, we believe that the more prudent course is to address Borne Valley because of the effects, which I think at this point are uncertain, certainly in the Nevada district courts, the Federal district courts of Bank of New York-Mellon v. As-and-Far Investments. Well, after the — and there's so many SFR cases, I don't know how to refer to them, but after the — after the SFR case, which deals with the notice issue, why do we have a continuing issue on that? The Nevada Supreme Court said contrary to what our panel thought in Borne Valley, the Nevada foreclosure statute incorporates other notice provisions. Your client got actual notice, did it not? Yes, it did. So why are we worried about notice at all? There's two — actually, three parts to that question, Your Honor. Well, let me just — let me make it easier for you. Your client got notice. Absolutely, I got notice. Okay. Why, even — even absent the subsequent decision of the Nevada Supreme Court, given that your client got notice, why is notice an issue in this case at all? It is for a couple of reasons. First, Borne Valley was a facial decision. And so just as a — as a matter of the district court's application of Borne Valley, it should have just done the facial challenge. Why? What case do we have that says our statute's unconstitutional because it doesn't provide for notice, but a party who got notice is — has standing to invoke that decision? I would say that the Borne Valley case itself stands for that because it was undisputed in Borne Valley that Wells Fargo in that case did get actual notice. The — at the very beginning of that decision, this Court explained that while the district court ruled in favor of Borne Valley in that case, reversal was appropriate because the Court had not considered the facial challenge. So while it did not expressly enunciate that rule, I think that's the only way to look at Borne Valley because, again, Wells Fargo did have actual notice in that case. So then let's move on to the Nevada Supreme Court's decision, which says, G-9 Circuit, as a matter of Nevada law, you got it wrong. Our statutes do provide for notice under these circumstances. And the reason that Borne Valley, in our view, remains good law is, first of all, the Nevada Supreme Court did not and could not undermine this Court's central holding in Borne Valley, which is that due process is required. Well, but it could undermine — it could undermine our understanding of Nevada law. Our holding in Borne Valley — our holding, somebody else's holding, another patent's holding in Borne Valley — was based on the premise that under Nevada law, no notice was provided to — to people in the position of your client. The Nevada Supreme Court said, no, you got Nevada law wrong. It does require notice. And, indeed, we all understand notice was given. So they can't overrule our understanding of Federal law, but surely they can tell us that we got Nevada law wrong, can't they? They — they can, and they attempt to do that. And the — You said they attempt to do that? Or did they do that? Fair — fair point, Judge. They — they do do that, but they do that in a narrow way. They cannot — and, in fact, we invite them to — we invited them to, and they did not address the content requirements of the notice. So, essentially, what they held in Bank of New York Mellon is that we were required — or the HOA was required to give us notice of what was sent to the homeowner, a carbon copy of what was sent to the homeowner. And the reason that that, in our view, does not cure the facial issue is that it does not disclose — the statute does not require the HOA to disclose. And, in fact, in this case, the HOA did not disclose that this was a super-priority lien was. And, in our view, that's more than just an academic concern. It's a real concern, because even if you look at the notice in this case, there was no way for the bank to determine whether a super-priority lien was a part of that lien. You cannot simply assume that because — and this is a function of the unique way that Nevada, based on the Uniform Act, has split the HOA lien between a super-priority and a sub-priority component. At the time that the foreclosure action begins, you look backward nine months to assess whether there's any maintenance, nuisance abatement, and what the normal budgeted assessments are. But the bank doesn't get that notice. The bank only gets a notice further on when the notice is a default under the interpretive guidance from the Nevada Supreme Court. So during that gap of time, it's possible — and we have seen cases, not this case, but other cases where the homeowner either enters into a payment plan or comes current on the assessment but doesn't pay the foreclosure expenses. So there's a real possibility there that the super-priority lien at that point, if there ever was one, has been cured, has been paid. And there's no way for the bank to know that. Oh, sure. There may not be a way for the bank to know it on the face of the notice. But the way the real estate world works, and you know this, is that when you want to cure a lien, you call up the lien holder and you say, is there still a lien and how much do I owe? Indeed, that's what you did here. And then you cured it. I think you did. We'll figure that out later. So what's the harm in just being told there's a lien and leaving it up to you to determine with the lien holder how big it is? What's the unconstitutionality of that? The harm, Your Honor, is that the statute did not require the HOA to respond in a manner that gives us what we think is constitutionally minimal notice. And, in fact, in this case it did not. But the question, you just said it was not constitutionally sufficient. But Judge Hurwitz just asked you why is that not constitutionally sufficient. The reason why is because, first of all, it does not tell us we have a super priority lien. And it does not tell us how much that super priority lien consists of. It shifts the burden. You are correct that the bank can inquire and, in fact, did inquire in this case. And lucky for us, we guessed right and paid the correct amount. But that was simply because the bank took the initiative, not because the statute required the HOA to deliver the appropriate notice. In our view, this is a constitutional gap that continues even after Bank of New York Mellon because it continues to shift the burden to the bank. Well, again, let's go back to the Constitution. What case says that if you get notice that somebody else is claiming an interest in property that you have notice, the notice must specify the precise amount of their claimed interest? I'm not aware of a case that that's — that speaks to that issue with that level of specificity. However, there are cases, including some cases that we noted in our 28J letter, that do talk about minimum — minimal content requirements. And — Let me pursue Judge Kerbe's question in the following sense. If you're right, the notice has to include the amount — it has to include the correct amount. Is that right? Yes, Your Honor. You know, that's going to give us an awful lot of constitutional challenges because I can imagine that notices will be imprecise from time to time, imprecise in a way that actually won't hurt you very much because you can figure it out, you can ask whatever it is. But this just opens up a world of due process challenges. I understand the Court's concern in that regard, but I think it's important for the Court to consider the opposite of that, which was what was going on here, which is they were giving us no information. I mean, they were telling us how much was owed as a global amount, but that is immaterial to what the bank has to pay because of the split lien concept. And it put the onus of the bank to ask the HOA. And I think one of the practical implications of this, which we have not discussed and that, unfortunately, is not raised in the facts of this case because this case, we did get a response, but we did have many cases where the bank received no response, and a couple of those cases are actually denoted as related cases to this case in our briefing. But in each of those cases, the bank actually tendered the correct amount of nine months of dues, correct? If the bank — If it tendered. It depends on the bank. If the bank tendered, and usually that was Bank of America. Well, we've got seven cases in front of us, and we're only arguing one. I think in every case in which there was a tender, nobody disputes that it was for nine months of the dues, correct? I think you will hear some dispute from the appellees on that because they believe some other amounts may have been owed. No, they believe maintenance fees and other things. I'm asking a very focused question. There's no dispute in any of these cases that the bank tendered at least nine months of assessments, the dues? That is correct. There is no dispute about that. So you didn't have any difficulty figuring that out in any of those cases? In these cases, Your Honor, the reason we didn't have difficulty is that the association responded. But the reason that the statute remains unconstitutional in our view is that the HOA is not required to respond. And there are cases, not these cases, not the cases submitted to you today. I'd like to just, for your record, for our record, mention cases 17-16706, 17-16404. Do you like an advisory ruling from us on cases not in front of us? No, Your Honor. I think an advisory ruling would be improper. I think it's just important for the Court to understand the overall context of what was happening in Nevada, which is that oftentimes in practice the HOAs were not responding and leaving the banks with really no information. And this is why. Can I stop you there? Because I don't understand why that poses a problem in light of whatever, whichever one of those SFR decisions we're talking about. If you get a notice that says the homeowner is in default on the dues, and it at least tells you what the amount per month is, right, and you can see that there are more than nine months in arrears, why — and it doesn't disclose anything else. Aren't you safe in just saying, okay, nine times whatever, here you go, and then even if you never get a response after that, aren't you protected? I think if the notice did, in fact, identify or itemize or at least give some indication of what the monthly dues were, I would agree with that. But the HOA statute and as applied did not do that. When we would get the notices, we would have to ask for that additional information. That's what happened in this case, and that's all the statute requires. Well, okay. That's what I'm confused about, because I — tell me if I'm wrong. I thought in all of these cases the — what I remember seeing is like a sort of a past due notice, and it would just say, you know, month — for this month, $47. For that month, $47. And you could just look at the notice and see what the amount is. So what you're referring to, Judge, is the ledger that the HOA provided in response to the bank. Oh, I see. And so the bank — and that's basically our point, that this is still opt-in. If that information or at least just the monthly amount had been included on the face of the notice, I would concede I would have no argument. Okay. So help me then, because you're right. I'm thinking of something else. What does the notice that you're talking about say? Because I don't remember what that looks like. The notice basically says it's directed to the homeowner. It doesn't mention the bank at all. And it says simply this is the global amount that's owed. And that amount is not differentiated. So we cannot tell from the face of the notice what amount of that is super priority or not, what is collection costs, what is fees, what — you know, there may be capital assessments that would be unique to that property and not assessed on, for example, the next-door property. And so all of that information is something the bank has to fish for on its own. Now, I can — So you get a notice — you get a notice that some amount is owed, but it's not broken into the super priority and ordinary priority lien? Correct, Your Honor. Okay. And your view is that that's facially unconstitutional? Our view is the statute should have required not only disclosure of the super priority amount, but more importantly, a statement that there was a super priority amount, that our lien was at risk. And I guess my question is, why isn't it unconstitutional as applied in those circumstances where you can't determine what the super priority lien is? I think it is unconstitutional as applied. Now, we did not reach that in this case because we had — But you learned — you learned the numbers. Well, not only did we learn the numbers, at the time we had what we thought would be enduring precedent under Bourne Valley, and so we did not really need to reach that issue. Now, if this case is remanded based on the tender, we won't ever reach there. But I do think that in cases where the HOA did not respond, the central holding of Bourne Valley, which is that there is due process, would open the door to an as-applied challenge. And I think — I think that is correct. If it's okay — But that — but that would overrule Bourne Valley's holding that it's facially unconstitutional. I don't know if it would overrule it directly. The central holding, in our view, is that there's due — that there's due process. I think the Nevada Supreme Court has contradicted this Court on whether we were supposed to get a carbon copy of the notice that went to the homeowner. So your view is that even under the Nevada Supreme Court's interpretation, a notice you get is insufficient? That's our view. The notice we get is insufficient, and if we opt in to try and get additional notice to be able to pay under Bourne Valley, we would still — Bourne Valley would remain good law and we would be able to seek relief in the Federal — in the Federal district courts on an as-applied challenge. Unfortunately, that door to us is closed in the state courts because the Supreme Court has not recognized this Court's view of the Federal due process issue. You're down to 34 seconds. I am. I'd like to reserve that for rebuttal, if that's okay. We'll make sure you get a chance to respond. Thank you. Good morning, Your Honors. My name is Karen Hanks, and I represent Thomas Jessup, LLC, and Thomas Jessup, LLC, Series 4. Contrary to the paperwork, Association Counsel and I agree that I'll speak for 10 minutes, and then he'll have five. But depending on the flow of the argument, he's also agreed to concede the entirety of the time to me. Okay. I want to address the Bourne Valley argument, since that's obviously been the issue that was addressed by Mr. Stern. I want to make something very clear that neither below or before you has Bank of America made a content-based facial challenge. They waived that. So our position is it is not before this Court. It wasn't before Judge Mahan, and it's not before you now. The Bourne Valley panel only did a facial challenge in terms of class of persons, i.e., who was entitled to notice under the statute. The Bourne Valley panel never analyzed NRS 116 from a content-based application. So that's an entirely new facial challenge that Bank of America is arguing today, and what they submitted in their 28F letter, which would be in violation of the rule under 28F. They're asserting an entirely new argument that my client never had an opportunity to respond to. Although if we reversed on the notice issue in light of what I call SRP, SRF, SPFR 2, they could raise it at the district court, could they not? Not in this case, Your Honor. Why not? You could affirm the district court's order, because while Judge Mahan found that Bourne Valley applied at that time, because that was pre-SFR 2, he found that Bank of America didn't have standing to raise a facial challenge because they got actual notice. So while he got to the right result. That's a separate issue. Sure. That's a separate. I'm saying if we send it back to the district court based on SFR 2, the clock starts all over on everything.  they want to raise. They may not be good ones, in your view, because they got actual notice, but they're not waived forever. I would submit that you wouldn't have to remand. There would be no basis. You could affirm Judge Mahan because he got to the right result, just probably for the wrong reason. Well, let's ask, but let's, we asked your friend about the weaker part of his case. Let us ask you about what I think is the tough part of your case. Sure. No doubt in this case that nine months of dues were tendered, correct? Nine months of common assessments, correct. Right. Why doesn't that discharge the super-priority lien? There's three reasons, Your Honor. The first reason is Bank of America failed to prove what the actual super-priority amount was. You get to contest that. They put in nine months of super-priority, and you never talk about never raising an argument. You never below said, oops, you got the wrong number. It should have been $50 more or $50 less. So tell me why. Did they or did they not? You know what the number is. Did they or did they not tender nine months of the dues? The common assessment is correct. Yes, they did. Yes, they did. Okay. So let's put that aside. They did that. Correct. Don't tell me what they might have done differently. Correct. The record, however, doesn't show whether the super-priority amount, whether the amount that was owed to the association at the time of the sale, September 12, 2012, included nuisance abatement and maintenance charges. Well, whose duty is that? They came to you and said, we want to discharge the lien, and you gave them a sheet. And nowhere on that sheet is maintenance, other things that might be in the super-priority. Now you're saying, well, we might have thought of those, and therefore the tender is no good. Don't you have some duty when somebody comes to you and says they want to discharge the lien to say, here's the amount of it, as opposed to just saying, here's the amount of the super-priority and the, what, regular priority? Sure. What you have to understand, though, is that at the time of the letter from Bank of America, that was in April of 2011. And so when the ledger was sent in April of 2011, there were no nuisance abatement and maintenance charges. I can concede that. Are there any in this record? There's none in this record. Okay. So you had a trial in the district court. You had a hearing in the district court. Now, this is an issue you're raising for the first time on appeal. No, actually, Your Honor. When I say there's no evidence of it in the record, I don't mean that they don't exist. I mean that Bank of America didn't meet its burden below. This wasn't actually a trial. This was summary judgment. Did they have the burden of demonstrating that the super-priority lien is limited to the only amounts that you identified as inside the super-priority lien? No, no, no. You're making a great notice argument for them. No, no, no. That's not what I'm saying. What I'm saying is that when you have a ledger that you're receiving in April of 2011, and then you have a sale that occurs some 17 months later, that's the facts of this case, you cannot come into court. This is what Judge Mahan's biggest point of contention was. You cannot come into court with the burden to say I've paid the super-priority, but I want to just tell you what I've paid and not tell you what the amount was. What's your burden? When they come to you, they come to you. Look, this is a real estate deal. We've done hundreds. Maybe the other judges haven't done these, but we've done hundreds of them. You go to the party with a lien and you say, how much does it take to discharge the lien? And you give them a number that is grossly over the amount that it takes to discharge the lien, because it includes regular priority, not super-priority. You never say to them once along the way, not you, because it's the Homeowners Association. I wanted to clarify that. Yes. But you're standing in their shoes. So they may be uncomfortable shoes, but you're standing in them. Nobody ever says to the bank, well, it's $270, whatever the number is in dues, and we've got maintenance fees, et cetera, which are X or Y or Z. They give them this thing that says here's the total number we're owed, not a single word about that anywhere along the way. Don't you have some obligations of reasonableness under the statute? No, I would absolutely agree that there's an obligation on both the Association and Bank of America's part to stay in communication with respect to what comprises of the lien. Merely the facts of this case, however, what Judge Mahan's real point of contention was with Bank of America was you had the burden to tell me what the super-priority was so that I could look at your payment of $423 and rule that that did satisfy. But he could look at their payment and say it covered nine months of dues, could he not? He could only look at it and say it. That's exactly right. So my question is under that circumstance, don't you have some obligation once you get that tender to say it's insufficient, it ought to include this other specific amount, or can you just say, as you did in this case, no thanks? No, no, no. It's not that. It might have been sufficient at the time of May 2011. The problem is when a sale happens some 17 months later, the statute possibly But if your client should have accepted it, your client, them. The Association. The Association. But if they should have accepted it when it was offered, which is to say if it was sufficient when offered, I don't care that you built up extra amounts later, because it you should have accepted it when offered. The problem with that is if other amounts were incurred, they carry a super-priority amount. And you could have filed a new notice of lien. Don't have to. At the time that they made the tender, you had a notice out there which would have been fully discharged by their tender, correct? Not fully discharged, Your Honor. Were there maintenance fees owed at the time they made their tender? No. But when I say the lien wouldn't be fully discharged, it's only the portion that the super-priority portion. Super-priority portion. Right. It's clear. I'm sorry. Right. The sale has to be able to go forward because only the whole lien can be discharged. Right. But don't you have some obligation under that circumstance to file in the interim, to file a new lien that says we now have new super-priority amounts? No, Your Honor, because it's still part of the lien that is still moving forward. That's why the split lien scheme allows. There's still delinquencies with respect to the lien that was originally recorded on the notice of delinquent assessment lien. So when they tendered the dues to you, did anybody say, fine, you've taken care of the dues. It may well be that we'll have maintenance fees or other things that are of super-priority sometime between now and the foreclosure and we'll notify you about them? Did that communication occur with the association? Yes. No, and here's why. The Bank of America in their letter actually told the association that those portions of the lien was junior, and that was going to be my secondary argument as to why it was an invalid tender. We know from the construct of, we call it the Diamond Spur case. You say there's so many SFR cases or SFR-3. So the Bank of America v. SFR case that dealt with tender, they gave us the construct of what constitutes a valid tender in Nevada, and it has to be unconditional. It has to be payment in full. It has to be unconditional or a condition upon which you can insist. But at the time it wasn't. They insisted. See, my difficulty here is we've got this little game of gotcha going. At the time they make the tender, they give you every penny, the homeowners association, that they're entitled to to discharge the super-priority lien. And now what was said is, well, what we didn't tell you was we were going to come in 14 months later and say it's insufficient now because in the meantime we incurred some other expenses. Don't you have at least some obligation between then and time, that time, and the time with the foreclosure to say, hey, we've got another $200 at super-priority? That may very well be, but in this case, when you say the gotcha, it was Bank of America was playing the gotcha because they sent a letter to the association that said, we want you, as acceptance of this $423 check, to condition it upon that any nuisance abatement and maintenance charges that might arise are junior. They didn't say that. They did say that. They didn't say that anything that occurs are junior. They said this discharges everything. Actually, Your Honor, if you look at the excerpt of record, this is page 69 through 70. If you look at their language of their letter, and this is why I gave the attachments of the statute to walk us through it, if you look at the very second paragraph of the letter, it's the bottom of page 69, excerpts of record 69. It says, while the HOA may claim a lien, under NRS 116.3102, section 1, paragraph J through N of this statute clearly provide that such a lien is junior, and they put it in all caps. And they later explain that we are only agreeing to pay you nine months, and by you accepting this check. So I was correct in saying that they did not say that maintenance and other things would be junior. They do. That's what they're saying in that paragraph.  And what they said was, we're paying off every — you gave them a sheet with a bunch of junior stuff on it, correct? So, yes. That would have a subpriority. Okay. Subpriority. The sheet that you gave them had one super priority thing on it, only one, and that was the dues. At that time. And so when they gave you a check for the dues, they said, you've given us a sheet with everything on it. Here's the check for the dues. Right. And everything else that you've listed is junior. No. No, actually, they don't. In their letter, they say, we're going to give you a check for $423, and we're going to say that our letter says everything that's under nuisance abatement and maintenance charges is junior, and your acceptance of this check, you agree to that. Do you agree with me that that letter never mentions the words nuisance abatement or maintenance charges? It does, in that it references 31032J. No, let's not play gotcha with each other. Do you agree with me that those words do not appear in the letter? The words nuisance, the words abatement do not. But when they refer to section 3102 subsection J, that is the nuisance abatement. Can I ask you? So they're citing that portion. Can I just ask one question about the decision that came down on November 13, 2018, from Nevada Supreme Court? For the tender case, Your Honor? Yes. The SFR, I just don't know how to distinguish them. But that's the one I'm looking at. I call it SFR 3. Oh, that's the third one. Okay. Yes. So I thought that case said that if the bank is not told that there are additional nuisance and maintenance charges, then the tender of the nine months is fully sufficient? Actually, not quite, Your Honor. If you look at that case, the SFR 3 case, the reason why they were able to find in that case the payment of the nine months of common assessments was enough is if you look at page 118 of that decision, they said based on the record there were no nuisance abatement and maintenance charges. So the SFR 3 decision didn't actually analyze the letter of whether it would be permissively conditional for a bank to insist that by accepting this check, you will waive your right to nuisance abatement. Okay. So point me to the language on 118 you're looking at. Sure. It starts with the paragraph that says the record establishes. Yeah. And it says pursuant to the HOA's accounting, nine months' worth of assessment fees total $720, and the HOA did not indicate that the property had any charges for maintenance. That's my point. And then the record showed the record showed, yes. Yeah. No. But I read the case, but tell me you obviously disagree. I read the case as holding very clearly that unless the HOA discloses to the bank some additional amount for nuisance or maintenance charges, and unless the bank is affirmatively given that information, then all the bank has to do is figure out what the nine months times whatever that fee is and tender that. And then even if they condition the except, you know, even if they have a right to insist that you take this in full discharge of the lien and that they're good to go. That's where I have a slight divergence, Your Honor, because in that case, the only analysis being done with respect to where the letter was impermissibly conditional was at the time collection cost was an undeveloped issue. And so the argument in that case was it was impermissibly conditional for Bank of America to open to insist that only nine months of common assessments were owed and it didn't include collection costs. What the SFR III court did not do is analyze the letter from the context of asking an HOA to waive the right to nuisance abatement and maintenance charges. But aren't collection costs priority? If they're part of the nuisance abatement, correct. So why doesn't the analysis that the Court made in that case extend to the other items that might be priority items that were never disclosed to the bank? I'm sorry. I'm not really understanding the question. Sure. That's a case that involves collection costs. Yes. That was the right. And the Court says, look, you didn't tell them there were collection costs, and therefore the tender is okay. We've got a case which may not involve collection costs and which you say there's nothing in the record about maintenance fees being owed. And so why doesn't the argument work exactly the same? Actually, in the SFR III case, it wasn't that collections costs weren't included. There were collection costs on the ledger that was sent to the bank in that case. And they did the same thing they did in this case, calculated what the nine months of common assessment. Right. Nathaniel. Right. What the argument was, though, in that case was that it was impermissibly conditional, because at the time the letter was sent, whether costs of collection were included in the super-priority amount was not decided, so it was impermissible for them to cut it out. What I'm drawing distinction is the Nevada Supreme Court — I'm sorry, my time has run out. Could I finish my — No, keep talking. What I'm trying to draw the distinction is the Supreme Court of Nevada did not analyze what we're arguing here, is that the tender itself was still invalid under Nevada law because it conditions the acceptance of that check that you, Association, will waive your right forever, if you accept this check, regardless if nuisance abatement or maintenance charges accrue. You will waive your right to them by taking this check, and that is not a condition upon which the bank can insist, and that would be consistent with the SFR 3 decision. You know, what bothers me about the position that you, but really the homeowners association, is taking is the homeowners association is clearly entitled to the money, but for some reason, some mysterious reason, they don't want to tell you, tell the bank how much money it is, and the reason they don't want to tell you how much money it is, they're not really primarily interested in getting the dues, what they're interested in is getting the super priority, and to reward the homeowners association for withholding the information as the amount owed strikes me as just allowing all kinds of trickery. No, Your Honor. They actually, in all the cases I've seen, and even the cases you have before you that weren't argued today, they get a full ledger for everything. I understand that. But they're unwilling to split out what the super priority amount is because they want to maintain the super priority, and that strikes me as just trickery. If I can, Your Honor, I know I'm way out of time, but I want to answer your question. No, please do. You have to understand during the time period, especially with all these cases, 2010, 2011, frankly, everyone was arguing over even the interpretation of whether there was a super priority, and this bank that sits before you here was not even conceding it. They were saying in litigation it was a payment priority. So I can assure you there was no trickery involved with any of the associations. It wasn't a matter of what is or is not the super priority. No one was really even taking a position. It was you're saying you want to pay this. Here's the full account. We'll give you the full amount, but we're not taking a position on what portion you're only supposed to pay or what part another party is supposed to pay. They just weren't taking a position. So maybe what I'm saying is that the argument you're now making in the future, now that we understand clearly the difference between priority and super priority, the argument you're making will allow the trickery, will incentivize the trickery. No. No, I don't think it will. What I have the expectation is with the expectation at least of the confines of Nevada Supreme Court has given us with respect to tender is that it has to be unconditional or permissibly conditional. And I think they would analyze it in a much different vein if they said you asked the association to waive it. You put them in a position they could not do. Because they've actually, Nevada Supreme Court has struck mortgage protection clause in the CC&Rs for that very same reason, saying our association, our statute says under 116.1104 they cannot waive this portion. Just the last point I want to make, Your Honor, is that the case also left good faith protection. Hang on just a second. Read the little note you got. That's what I want to make sure the point I make, Your Honor. The other point that it's in the brief, Your Honor, but the SFR 3 decision also left open the good faith rejection. And that's more for the association. If we had time, the association I think was going to speak on that. But it kind of goes to your trickery concern that the Nevada Supreme Court has left open that there might be circumstances where the association could show there was a good faith rejection. That's what I was getting to. At this time, cost wasn't on the table. No one understood if that was included. No one understood if there was argument over whether there was even a super priority portion. So there really wasn't any trickery. It was just everyone was in a position where they didn't really understand, and they were just giving all the information and not taking a legal position. So that argument is still on the table with respect to the SFR 3 decision, Your Honor. Thank you. Thank you. Would you please? I thought the understanding was that if she took the entire time, she took the entire time. Listen, I don't want to cut you off. Would you stand up and tell us in a minute or so what you need to say? I'm sorry? I don't want to cut you off. Would you please tell us what you need to say? Would you put a minute on the clock, please? Thank you, Your Honor. My name is Bill Ebert. I'm here on behalf of the HOA. The SFR 3 case. You're not even on the argument list. I've got Mr. Ebert and Ms. Hanks. I'm sorry, Your Honor? You're Mr. Ebert? Yes, I am. Oh, I'm sorry. I misheard your name then. Okay, please. I'm sorry. Stand in the middle right next to the microphone. There you go. Thank you. From the HOA's perspective, the key issue was whether the rejection at the time was reasonable. In 2011, the NRED opinion regarding costs and fees being included had not come down yet. In fact, there was a condominium commission decision that had been recognized in the district court that said that, in fact, the cost and fees for the normal nine months, not the nuisance and abatement, was to be included. There were the conditions that are counsel referenced in the tender, and we dealt with those in our brief. The biggest concern that was actually on people's mind at that point was this was a one-and-done deal. The argument was being made that you've got one super-priority lien and that's it. And if we accepted that tender under the non-negotiable, you accept everything in this letter provisions of it, that would mean that at least arguably we're waiving our right to bring further super-priority liens. Did you have any obligation of commercial reasonableness? I know you had a you took a position that was broader than what the statute provided, I guess. But couldn't you at least have said to the bank, by the way, there's another hundred bucks in fees? They would have paid it. They were just trying to discharge the super-priority lien. And instead, you just reject. It just — that's what troubles me about this whole thing. If there had been any attempt at communication between the two sides, if you had said to the bank, gee, give us $300 more because we think that's part of the super-priority lien, you would have gotten it. There's no doubt you would have gotten it. But instead, you just reject and then show up 14 months later and say, well, in the meantime, we've incurred maintenance fees. This just strikes me as not the way the railroad should run. Your Honor, commercial reasonableness in that context, I don't know that there was an obligation in that context. The Nevada Supreme Court has held that, in essence, commercial reasonableness and that termination as it relates to the sale requires evidence of some sort of real cyander, actually, a fraud or oppression or something along those lines. And I suppose what Your Honor is saying, that could be oppression, I suppose. But I don't think it was. I think the good faith understanding of everyone at that time was the lien was a whole lien. That's what the Nevada Supreme Court was saying. It's a whole lien, and you either satisfy the lien, you can then make a claim for credit back on it, or you don't. And so, I mean, I'm loathe to say that there is no commercial reasonableness. But you all didn't even respond by saying, no, our position is that $2,800 is the entire amount of the super-priority lien. And given the fact that it's such a small amount compared to the first deed of trust, my guess is that gets worked out. And here we are. I understand that the law was unclear. Here we are four years later saying, well, there's another $100 owed. It's not in the record, but we could show it if you'd let us. And that just strikes me as not the way this thing ought to run. Well, Your Honor is correct. We did not respond. Or if we did, we certainly don't have any evidence of it, and it's not in the record. We did not respond to the tender. It was simply rejected. Your Honor is correct on that. Okay. Thank you. Thank you for the time. Let me say one thing, just as a matter of, if ever you are so lucky as to appear before the Ninth Circuit in the future, splitting argument is always somewhat difficult in terms of running over in time. And some judges, some presiding judges, are quite hard-nosed about time. I'm a bit of a softy. I do not anticipate that all of us will behave in the same way. Okay. Would you put two minutes on the clock, please? Thank you. In rebuttal, there is, I think, no question that SFR Investments III, or Diamondspur as we call it, that's the name of the HOA, Diamondspur, is dispositive of the tender issue. And I would like to point out for the Court that there was actually a petition for a hearing filed in that case that the Nevada Supreme Court considered. They did some technical amendments to their original opinion, and all of these maintenance and nuisance abatement issues were addressed in that case. So it's not correct to say that there's still an issue out there as to nuisance and maintenance. But how about your opponent's argument that if you try to say, listen, take the $400 or whatever you're offering, and that's going to be in full satisfaction forever of any aspect of this lien that could be deemed super priority, how does that protect them if, subsequent to that, they do incur nuisance or maintenance fees? In two ways, Judge. First of all, the Association has the ability to record a new notice of lien and start the process over. But I do want to quibble with the argument or the suggestion that that's what the letter said. The letter did not say that. The letter simply said that the payment was for satisfaction of the bank's financial obligations to the HOA, which everybody understood was the super priority lien incurred at that time. Okay. But just forget maybe about the facts of this individual case. But let's say in the typical case where you are offering to pay the $400 or whatever it is, and you basically put in the condition that you did here, I'm just saying I think I understand the argument that, well, what's the Homeowners Association supposed to do? If I accept this, I guess that means that if we incur $5,000 to abate some nuisance later, I'm not going to be able to get super priority status for that? I think the response to that, Judge, is that in Diamond Spur or SFR 3, the Supreme Court considered that very issue. It's not accurate to say that that was not presented there. And what the Court determined was not only is there no evidence in the record of the assessments with nuisance abatement, you have to look backward. So you start when the foreclosure started and look backward. And if there was no nuisance abatement or maintenance at that time, it's not part of the lien. That doesn't mean that the HOA can't record a new notice to claim those amounts. And that's how the HOA is protected. But what your opponent was saying was that maybe we could ordinarily, but you sent us a letter that conditioned our acceptance of the dues on giving up all those rights. And again, my answer to that, similar to my answer to Judge Watford, is that the Nevada Supreme Court essentially in Diamond Spur, SFR 3, considered an identical letter. Well, they considered an identical letter, but maybe not this argument. And they did consider the argument because SFR made that argument on its petition for rehearing, and it didn't go anywhere. And again, if we're looking at the good-faith rejection that the HOA brought up, what the Court has said in those cases is here the bank was entitled to insist on every condition, if you describe it as a condition, in the letter. It said this is the amount. There's really no information that is improper or incorrect in the letter. And as I think you discussed with counsel for Jessup here, the letter doesn't say anything about nuisance abatement. They have kind of ---- But it does list the statutory provisions under which nuisance abatement becomes I think it does, Your Honor. That's what I was going to ask. It mentions in other statute nuisance abatement arises under 163.310.312. And the letter does not mention that statute. Okay. Thank you. Thank you very much. Thank both sides for their arguments. We're now in adjournment until tomorrow.
judges: W. Fletcher, Watford, Hurwitz